**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FN HERSTAL, S.A., and FN AMERICA, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GLOCK, INC. <br><br> Defendant. | **COMPLAINT** <br> *(Jury Trial Demanded)* |

Plaintiffs FN Herstal, S.A. ("FNH") and FN America, LLC ("FNA") (collectively "Plaintiffs" or "FN"), for their Complaint against Glock, Inc. ("Defendant" or "Glock") allege as follows:

## NATURE OF ACTION

1. This is an action for patent infringement pursuant to 35 U.S.C. § 271(a).

2. FN brings this action to halt Glock's ongoing and willful infringement of FN's United States Patent relating to firearms with interchangeable sighting device systems.

**PARTIES**

3.      Plaintiff FNH is a corporation organized and existing under the laws of Belgium, with its principal place of business located at Voie de Liège 33, B-4040 Herstal, Belgium.

4.      Plaintiff FNA is a limited liability company organized under the laws of Delaware, having a principal place of business located at 7950 Jones Branch Drive, Suite 602N, McLean, Virginia.

5.      Defendant Glock is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6000 Highlands Pkwy SE, Smyrna, GA 30082.

**JURISDICTION AND VENUE**

6.      This action arises under the U.S. Patent Act, codified at 35 U.S.C. § 1 et seq., and in particular, but not limited to, 35 U.S.C. §§ 271, 281, 283, 284 and 285.

7.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the patent laws of the United States.

8.      This Court has personal jurisdiction over Glock in that Glock has its principal place of business in this district and division. Additionally, this Court has

personal jurisdiction over Glock in this action because it is a Georgia corporation domiciled in the State of Georgia.

9.    Further, Glock directly or through agents and/or intermediaries, committed acts within this District giving rise to this action and/or has established minimum contacts with this forum such that the exercise of jurisdiction over Glock would not offend traditional notions of fair play and justice.

10.    Glock regularly conducts business in this District and purposefully avail itself of the privileges of conducting business in Georgia and this District. Glock, directly and/or through its agents and/or intermediaries, makes, uses, imports, offer for sales, sells, and/or advertises its products in Georgia, including in this District. Glock has placed, and continues to place, infringing products into the stream of commerce via an established distribution channel, with the knowledge and/or understanding that such products are sold in the United States and specifically in Georgia, including in this District.

11.    Glock has derived substantial revenue from its infringing activity occurring within the State of Georgia and this District and/or should reasonably expect its actions to have consequences in this District. In addition, Glock has, and continues to, knowingly contribute to and induce infringement within this district by advertising, marketing, offering for sale and/or selling infringing products within this District and by providing instructions, user manuals, advertising and/or

3

marketing materials which facilitate, direct, or encourage infringing activity with the knowledge thereof.

12.    Glock has committed patent infringement in Georgia, including this District, which has led to foreseeable harm and injury to FN.

13.    Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b). Glock resides in this District as it maintains physical offices with employees in this District and is registered to do business in Georgia. Glock has also transacted business in this District and has committed acts of infringement in this District by, among other things, making, using, offering to sell, selling, and/or importing products that infringe FN's patent.

## **FACTS**

14.    FNH is a long-established and famous firearms and weapons manufacturer whose history dates back to 1889. FNH manufactures and distributes a full range of firearms and accessories for defense, law enforcement, hunting, marksmanship and for persons having an interest in acquiring such firearms and accessories. FNH engages in designing, testing, manufacturing, marketing, and selling light and portable weapons, integrated weapons systems, ammunition, and associated products, with many such products in widespread worldwide distribution, often with items particularized for military and law enforcement operations. FNH

continues to focus on innovation and product improvements, resulting in products being renowned and used throughout the world.

15.     FNA is a wholly owned subsidiary of FNH that manufactures, assembles, markets and sells firearms and related items to commercial, law enforcement, and U.S. Government customers in the United States. FNA is well regarded for selling high quality firearms and products for the military, law enforcement and commercial markets.

***FN's '654 Patent***

16.     On July 16, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,352,654 titled "Firearm with Interchangeable Sighting Device System." A true and correct copy of the '654 Patent is attached as **Exhibit 1**. The '654 Patent issued from United States Application No. 15/969,656, filed on May 2, 2018. The '654 Patent claims priority to U.S. Provisional Patent Application No. 62/545,122, filed on August 14, 2017. The '654 Patent expires on May 2, 2038.

17.     FNA is the owner by assignment of all right, title, and interest in and to the '654 Patent, including the right to sue for and collect past, present, and future damages, in addition to the right to seek injunctive relief.

***Glock's Infringing Product***

18.    Historically, Glock handguns have been sold from Glock with factory-installed, low-profile iron or polymer sights designed to provide a simple aiming reference for the user. These sights typically consist of a front sight post mounted near the muzzle end of the slide and a rear sight unit mounted toward the back of the slide.

19.    Early generations of Glock handguns were manufactured with solid slides that were not cut, milled, or otherwise configured at the factory to accept reflex sights or other optical aiming devices beyond the factory-installed low-profile iron or polymer sights. As a result, those pistols were not compatible, in their original factory configuration, with slide-mounted aftermarket reflex sights absent aftermarket modification.

20.    In order to mount such optics on early generation Glock handguns, an owner was required to modify the slide, including but not limited to machining or milling the slide to create an optics cut, or alternatively installing an adapter system that replaced or interfaced with the factory rear sight. These modifications typically required the services of a gunsmith or specialty machining provider and permanently altered the original slide configuration.

21.    Beginning with its fourth generation of Glock handguns, Glock began offering factory-produced variants that incorporated a Modular Optic System ("MOS"). The MOS configuration utilizes a factory-cut, precision-machined slide.

22.    The MOS system is designed to permit the mounting of certain commercially available reflex sights either directly to the slide or with the use of interchangeable adapter plates supplied by the manufacturer. These plates interface between the slide and the optic, allowing compatibility with multiple optic footprints without the need for aftermarket milling or additional modifications to the slide.

23.    One drawback of the MOS system is that it requires the adapter plate to be secured to the slide with a first set of screws, and the optic to be secured to the adapter plate with a second set of screws, thereby creating multiple threaded interfaces and potential failure points. In some instances, for example when aftermarket adapter plates or non-factory screws are used, the screws or associated thread locker are known to interfere with the slide's internal components and negatively affect the cycling action and overall reliability of the pistol.

24.    Glock has been and is now directly and/or indirectly infringing, or causing the infringement of, literally and/or under the doctrine of equivalents, the '654 Patent by making, using, selling and/or offering for sale in the United States, and/or importing into the United States, products covered by one or more of the claims of the '654 Patent, including, but not limited to the Gen6 line of Glock handguns (the "Accused Products" or the "Glock Gen6").

7

25. On December 6, 2025, Glock publicly announced the official launch of the Glock Gen6 line of handguns. A true and correct copy of Glock's corresponding press release is attached as **Exhibit 2.**

26. As detailed herein, the Glock Gen6 handguns are sold with a factory-milled slide configured to receive an included optic plate, which in turn is configured to receive and secure a reflex optic to the slide, thereby forming an integrated slide–plate–optic mounting assembly as sold and intended by Glock (the "Gen6 Optic Ready System").

27. Glock describes the Glock Gen6 handguns as "optic-ready with three optic plates that allow various optics to be screwed directly into the slide." **Exhibit 3.**

28. Each of the three plates included from the factory with the Glock Gen6 are designed to be seated atop the factory milled slide, as depicted in the Glock Gen6 Optic Ready instructional manual attached hereto as **Exhibit 4**.

29. The Glock Gen6 instructional manual further identifies which of the three included optic plates corresponds to specific optic models and instructs users which plate to select for a given optic. The manual directs users that, "[w]hen the GLOCK OR Plate is completely seated on your GLOCK OR Pistol install the optical system according to the directions of the manufacturer," and includes a photograph depicting an optic installed on the slide. *See* **Exhibit 4.**

30.    Glock's marketing materials further provide consumers with a table identifying common optic models and the corresponding optic plates to be used with those optics, thereby expressly promoting and instructing consumers regarding the optic-mounting capability of the accused Gen6 Optic Ready System[1]:

## GEN6 OPTIC READY SYSTEM

Standard frame GLOCK Gen6 pistols come optic-ready with three optic plates that allow various optics to be screwed directly into the slide. This system provides users with enhanced flexibility to customize their setup according to specific operational needs, and is engineered to ensure long-term durability and reliability.

Optic Ready Adapter Instructions Download

| OPTIC | OPTIC PLATE | SCREWS |
|---|---|---|
| Trijicon RMR | 02 Plate | OEM |
| Trijicon RCR | 02 Plate | OEM |
| Trijicon RMR HD | 02 Plate | OEM |
| Trijicon SRO | 02 Plate | OEM |
| Holoson 508T | 02 Plate | OEM |
| Holosun 407C | 02 Plate | OEM |
| Holosun 507C/Comp | 02 Plate | OEM |
| C&H Precision | 02 Plate | OEM |
| C-More Optics | 03 Plate | OEM |
| Vortex Defender - ST/XL | 04 Plate | OEM |
| Eotech EFLX | 04 Plate | OEM |
| Leupold DPP | 04 Plate | OEM |

31.    Glock's Gen6 handguns, containing the Gen6 Optic Ready System, infringe one or more claims of the Asserted Patents.

---

[1] Image captured from https://us.glock.com/en/about/technology/optic-mounting. A true and correct copy is attached hereto as **Exhibit 3** (last accessed April 9, 2026).

9

32.    Images of the infringing portions of Glock Gen6 handgun are depicted below:



*Figure 1*. Glock 19 Gen6 without optic plate.



*Figure 2*. Glock 19 Gen6 with included optic plate.

33.     The included optic plates are especially made and adapted for use in mounting a reflex optic to the factory-milled slide of the Glock Gen6 handgun and are not staple articles of commerce suitable for substantial non-infringing use.

34.     FN has lost sales of its competing products due to Glock's infringement of the '654 Patent.

35.     Glock has had actual knowledge of the Asserted Patents since prior to the filing of this Complaint, at minimum, as a result of Glock's investigation and monitoring of FN's patent portfolio and related competitive intellectual property. By way of example, patents assigned to FN have previously been cited against Glock during prosecution of Glock patent applications before the U.S. Patent and Trademark Office ("USPTO"). Such citations necessarily required Glock and its patent counsel to review and analyze the cited FN patents. On information and belief, the '654 Patent, which is publicly available and part of FN's well-known firearms-related patent portfolio, would have been identified through the same monitoring and prosecution review activities. Accordingly, Glock had actual knowledge of the '654 Patent well before the filing of this action. At the latest, Glock had actual knowledge of the '654 Patent from FN's website and from the date of the filing of this Complaint.

36.     On information and belief, Glock has been on notice of their infringement of the '654 Patent since at least the dates the Asserted Patents issued.

37.     FN has satisfied the statutory requirement to mark its products in accordance with 35 U.S.C. § 287.

## COUNT I
### Direct Infringement of U.S. Patent No. 10,352,654
### 35 U.S.C. § 271(a)

38.     FN incorporates by reference the allegations contained in the foregoing paragraphs.

39.     Glock infringes, and has infringed, one or more claims of the '654 Patent directly, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale and/or importing into the United States, without authority, firearms including the accused Gen6 Optic Ready System. The Gen6 Optic Ready System meets each and every element of claims 1, 3, 4, 9, 10, 11, 15, 16, 17, 19, 20 of the '654 Patent. Glock is therefore liable for direct infringement pursuant to 35 U.S.C. § 271(a).

40.     Glock knew or should have known of the '654 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '654 Patent. On information and belief, Glock's infringement of the '654 Patent has been and continues to be willful and deliberate.

41.     Despite knowing that its actions constituted infringement of the '654 Patent and/or despite knowing that there was a high likelihood that its actions

constituted infringement of the patent, Glock nevertheless continued its infringing actions.

42.    Glock's acts of infringement have injured and damaged FN. Glock's wrongful conduct has caused FN to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, and importing the patented inventions. Upon information and belief, Glock will continue these infringing acts unless enjoined by this Court.

43.    FN is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

**COUNT II**
**Induced Infringement of U.S. Patent No. 10,352,654**
**35 U.S.C. § 271(b)**

44.    FN incorporates by reference the allegations contained in the foregoing paragraphs.

45.    Glock has had knowledge of the '654 Patent at least as of the filing of this Complaint, and on information and belief, prior thereto. Glock has been and is now actively infringing the '654 Patent, literally or under the doctrine of equivalents, in violation of at least 35 U.S.C. § 271(b) by actively and knowingly inducing others to make, use, sell, offer for sale, or import into the United States products, including the Glock Gen6 handguns with the Gen6 Optic Ready System designed, marketed,

and sold to accept slide-mounted optical sights, that infringe one or more claims of the '654 Patent, including at least claims 1, 3, 4, 9, 10, 11, 15, 16, 17, 19, and 20.

46.     Glock has induced and continues to induce, with specific intent by, for example, encouraging and facilitating infringing uses of the Glock Gen6 handguns with the Gen6 Optic Ready System through the creation and dissemination of promotional materials, marketing materials, instructional materials, product manuals, and/or technical materials to third parties, including customers, subsidiaries, affiliates, distributors, trainers, testers, and end users, who directly infringe the '654 Patent. Glock has taken these actions with knowledge of the '654 Patent and with knowledge that the induced acts constitute patent infringement, and with the specific intent to induce such infringement.

47.     FN is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

## COUNT III
### Contributory Infringement of U.S. Patent No. 10,352,654
### 35 U.S.C. § 271(c)

48.     FN incorporates by reference the allegations contained in the foregoing paragraphs.

49.     Defendant Glock has had knowledge of the '654 Patent at least as of the filing of this Complaint, and on information and belief, prior thereto.

14

50.     Glock has been and is now contributing to the direct infringement of the '654 Patent, in violation of 35 U.S.C. § 271(c), by others, including customers, end users, and third parties, by importing, selling, and/or offering for sale within the United States products that include a component especially made or especially adapted for use in infringement of the '654 Patent.

51.     The accused component includes at least the Gen6 Optic Ready System incorporated into Glock Gen6 handguns, which is designed, marketed, and sold to accept slide-mounted optical sights in a manner that infringes one or more claims of the '654 Patent, including at least claims 1, 3, 4, 9, 10, 11, 15, 16, 17, 19, and 20.

52.     The Gen6 Optic Ready System constitutes a material part of the inventions claimed in the '654 Patent and is especially made or especially adapted for use in infringing the '654 Patent.

53.     The Gen6 Optic Ready System is not a staple article of commerce suitable for substantial non-infringing use, but rather is specifically designed to enable configurations and uses that infringe the '654 Patent.

54.     Glock has contributed to the infringement of the '654 Patent by others with knowledge of the '654 Patent and knowledge that the Gen6 Optic Ready System is especially made or especially adapted for use in infringement of the '654 Patent.

55.    Glock's contributory infringement has caused FN damages. FN is entitled to damages adequate to compensate it for the infringement but in no event less than a reasonable royalty.

## DEMAND FOR JURY TRIAL

56.    Pursuant to Federal Rule of Civil Procedure 38(b), FN requests trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, FN prays for judgment as follows:

57.    A judgment that Glock has infringed FN's '654 Patent in violation of 35 U.S.C. § 271(a) and is liable for all remedies, therefore.

58.    A judgment that the '654 Patent is valid and enforceable

59.    A judgment that Glock's infringement of the'654 Patent was willful, intentional and knowing, including in violation of 35 U.S.C. § 281.

60.    A permanent injunction prohibiting Glock and its officers, agents, representatives, assigns, licensees, distributors, employees, related entities, and all those acting in privity or acting in concert with it, from infringing, inducing, or contributing to the infringement of the '654 Patent.

61.    That the Court order an accounting of the total profit of Glock arising from Glock's aforementioned infringement of the '654 Patent, and that such total profits be awarded to FN pursuant to 35 U.S.C. § 289; or alternatively that the Court

16

order an accounting for all monies received by or on behalf of Glock and all damages sustained by FN as a result of Glock's aforementioned infringements alleged pursuant to 35 U.S.C. § 271(a), and that such monies and damages be awarded to FN.

62.     An award to FN of its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law, including this Court's inherent authority.

63.     That FN be awarded pre-judgement and post-judgement interest and costs as allowed by law.

64.   That FN have such other and further relief as is warranted by the facts established at trial or which this Court may deem as just and equitable.

*[Signature block on the following page.]*

Respectfully submitted this 10th day of April, 2026.

**BODKER RAMSEY ANDREWS WINOGRAD & WILDSTEIN, P.C.**

*/s/ Robert E. Rigrish*
Robert E. Rigrish
GA Bar No. 605573
rrigrish@brawwlaw.com
Thomas Rosseland
Georgia Bar No. 615230
trosseland@brawwlaw.com

**WILLIAMS MULLEN**

Robert C. Van Arnam, N.C. Bar No. 28838
(*pro hac pending*)
Richard T. Matthews, GA Bar No. 669751
Jenny J. Wang, N.C. Bar No. 61255
(*pro hac pending*)
Aaron T. Fadden, N.C. Bar No. 59495
(*pro hac pending*)
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Telephone: (919) 981-4055
Email: rmatthews@williamsmullen.com
Email: rvanarnam@williamsmullen.com
Email: jwang@williamsmullen.com
Email: afadden@williamsmullen.com

*Attorneys for Plaintiffs*